NEFF (BAYLOR v.). See Case No. 1,143.

NEFF (CRABTREE v.). See Case No. 3,315.

NEFF (HARPER v.). See Case No. 6,089.

---

## Case No. 10,083.

### NEFF v. PENNOYER.

[3 Sawy. 274; 15 Am. Law Reg. (N. S.) 367.] [1]

Circuit Court, D. Oregon. March 9, 1875. [2]

POWER OF A STATE OVER THE PROPERTY OF NON-RESIDENTS—PROOF OF SERVICE IN CASE OF PUBLICATION — JUDGMENT-ROLL NOT THE WHOLE RECORD—EVIDENCE NECESSARY TO AUTHORIZE ORDER FOR PUBLICATION—EVIDENCE OF CAUSE OF ACTION—A VERIFIED COMPLAINT AN AFFIDAVIT—DILIGENCE TO ASCERTAIN THE PLACE OF RESIDENCE OF NON-RESIDENT DEFENDANT—PROOF OF PUBLICATION OF THE SUMMONS—AVERMENT OF SERVICE IN JUDGMENT ENTRY—PRESUMPTION IN FAVOR OF JURISDICTION.

1. A state has the power to subject the property of non-residents, within its territorial limits, to the satisfaction of the claims of her citizens against such non-residents by any mode of procedure which it may deem proper and convenient under the circumstances, and therefore may, for such purpose authorize a judgment to be given against such non-resident prior to seizure of such property, and with or without notice of the proceeding.
[Cited in Hannibal & St. J. R. Co. v. Husen, 95 U. S. 471; Bowman v. Chicago & N. W. Ry. Co., 125 U. S. 465, 8 Sup. Ct. 702.]
[Cited in Marsh v. Steele, 9 Neb. 99, 1 N. W. 869.]

2. The proof of service required by section 269 of the Oregon Code to be placed in the judgment-roll includes in the case of service by publication, the affidavit and order for publication as well as the affidavit of the printer to the fact of publication.
[Cited in Gray v. Larrimore, Case No. 5,721.]
[See Hahn v. Kelly, 34 Cal. 391.]

3. The judgment-roll required by said section 269 is not the exclusive record of the case, but only a collection of papers and entries selected from the record for convenience and economy and sufficient in the opinion of the legislature to show the judgment of the court and its jurisdiction to give it; but the record is a history of all the acts and proceedings in the action from its initiation to final judgment which includes all the papers filed in the case, and upon which the court acted in any step of the proceedings, and this record is of the same verity as the judgment-roll which is made up from it.
[See Hahn v. Kelly, 34 Cal. 391.]

4. In case of service by publication the record must show that there was evidence presented to the court or judge who made the order for publication by affidavit, sufficient to prove the ultimate facts which bring the case within sections 55 and 56 of the Oregon Code, allowing such service; and it is not enough that the affidavit repeats the mere language of the statute, it must contain facts and circumstances sufficient to prove these ultimate facts; but when a judgment is attacked collaterally it is sufficient if the evidence contained in the affidavits tends to prove such facts.

5. An averment in an affidavit for an order for publication, "that plaintiff has a just cause of action against defendant for a money demand on account," is a mere assertion of the fact of the existence of such cause of action—the opinion of the affiant to that effect, but is no evidence of it, and is therefore insufficient to authorize such order.

6. A verified complaint as to the facts stated therein, is an affidavit, and when it appears from the record that such a complaint, containing evidence of a cause of action against the defendant, was on file at the time of allowing an order for publication, the court will presume that such complaint was used as evidence therefor.
[Cited in U. S. v. Griswold, Case No. 15,266; McDonald v. Cooper, 32 Fed. 751.]

7. Where an order allowing service of a summons by publication, under sections 55 and 56 of the Oregon Code omits to direct that a copy of the complaint and summons be mailed to the defendant, addressed to his place of residence, it must appear from the affidavit that the plaintiff had used reasonable diligence to ascertain such place of residence and that it is unknown to him.

8. Section 69 of the Oregon Code, having provided that in case of publication of summons "the proof of service" shall be by "the affidavit of the printer or his foreman or his principal clerk," an affidavit to such a publication by one styling himself therein "editor," is not within the statute and therefore no evidence of the facts contained in it.

9. An averment of due publication of a summons in a judgment entry which appears from the whole record to be untrue or is not affirmatively supported by the facts contained in such record, is a nullity and may be disregarded.
[Cited in Gager v. Henry, Case No. 5,192; McDonald v. Cooper, 32 Fed. 748.]
[Cited in De Corvet v. Dolan (Wash.) 35 Pac. 1072.]

10. The common law presumption in favor of the jurisdiction and regularity of the proceedings of courts of record or general jurisdiction had its origin in the fact that at common law no judgment could be given against a defendant until he had appeared in the action, but no such presumption does or ought to apply in cases where the defendant is a non-resident and there was no appearance and only constructive service of the summons by publication.
[See Hahn v. Kelly, 34 Cal. 391.]

[This was an action in the nature of ejectment by Marcus Neff against Sylvester Pennoyer.]

John W. Whalley, M. W. Fechheimer, and W. W. Page, for plaintiff.

H. Y. Thompson and George H. Durham, for defendant.

---

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission. 15 Am. Law Reg. (N. S.) 367, contains only a partial report.]

[2] [Affirmed in 95 U. S. 714.]

DEADY, District Judge. This action is brought to recover the possession of a half section of land situate in Multnomah county, the same being donation claim 57. It is alleged in the complaint that the plaintiff is a citizen of California, and the owner, and entitled to the possession of the premises which are worth $15,000; and that the defendant is a citizen of Oregon and wrongfully withholds the possession of the premises from the plaintiff.

The answer of the defendant tacitly admits the citizenship of the parties and the value of the premises as alleged in the complaint, but denies the ownership of the plaintiff and his right to the possession of the premises, and sets up a title thereto in himself. The defense of title in the defendant is controverted by the reply. By consent of parties the cause was tried by the court without the intervention of a jury, on September 24 and 25, 1874, and afterwards submitted on briefs.

On the trial the plaintiff proved that a patent to the premises was issued to him by the United States on March 19, 1866, as a settler under the donation act of September 27, 1850, and rested his case.

Thereupon the defendant offered in evidence duly certified copies of the complaint, summons, order for publication of summons, affidavit of service by publication, and judgment in the action of J. H. Mitchell v. Marcus Neff [unreported], in the circuit court of the county of Multnomah, wherein judgment was given against the defendant therein on February 19, 1866, for the sum of $294.98; to the introduction of which papers the plaintiff objected, because: (1) Said judgment is in personam, and appears to have been given without the appearance of the defendant in the action, or personal service of the summons upon him, and while he was a non-resident of the state, and is therefore void. (2) Said judgment is not in rem, and therefore constitutes no basis of title in the defendant. (3) Said copies of complaint, etc., do not show jurisdiction to give the judgment alleged, either in rem or personam; and (4) it appears from said papers that no proof of service, by publication, was ever made, the affidavit thereof being made by the "editor" of the Pacific Christian Advocate, and not by "the printer or his foreman, or his principal clerk." The court admitted the evidence, subject to the objections.

The defendant then offered in evidence a certified copy of an execution issued upon said judgment on July 9, 1866, and the returns thereon, from which it appears that the premises in question were sold upon said execution to satisfy said judgment on August 7, 1866, to J. H. Mitchell for the sum of $341.60, to the introduction of which papers the plaintiff objected, because the judgment in Mitchell v. Neff being given without jurisdiction, the execution was void, and, further, that the notice of sale upon said execution and attached to the return, was no part of

either, and therefore should not be admitted. The court admitted the evidence, subject to the objections.

The defendant then offered in evidence three papers purporting to be deeds to the premises to the defendant, the first being signed by Jacob Stitzel, sheriff of Multnomah county, by his deputy, C. B. Upton, on January 14, 1867; the second by said Stitzel, ex-sheriff of said county, on July 24, 1874, and the third by E. J. Jeffery, sheriff of said county, on July 21, 1874. To the introduction of which papers the plaintiff objected, because as to the first one: 1. It was not made to the purchaser at the sheriff's sale. 2. It is not sealed, witnessed or properly acknowledged as a deed. To the second one: 1. There being no valid judgment proved, the instrument is not a link in the chain of title. 2. It was not made to the purchaser at the sheriff's sale; and as to the third one, for the same reasons as in the case of the second one, with the additional one: That it was not executed by the officer making the sale. The court admitted the evidence subject to the objection.

The defendant then offered in evidence an assignment by J. H. Mitchell to the defendant of the certificate of purchase of the premises, dated August 10, 1866, to the introduction of which the plaintiff objected, because: (1) There being no valid judgment, assignment is not evidence of title in the defendant. (2) If there were a valid judgment to support the sale to Mitchell, the assignment would pass a mere equity to the defendant, to enforce a conveyance from the former after he had received one from the sheriff, and therefore it is not evidence of title in the defendant. The court admitted the evidence, subject to the objections.

The defendant having rested, the plaintiff offered in evidence a duly certified copy of the judgment-roll in Mitchell v. Neff, which contained not only the complaint, summons, and other parts of the record of that case already introduced by the defendant, but also a copy of the affidavit of the plaintiff therein, upon which the order for publication was made; to the introduction of which the defendant objected because said affidavit was not properly a part of the judgment-roll. The court admitted the evidence subject to the objections.

Upon this evidence, the right of the plaintiff to recover is admitted, unless by virtue of the sale of the premises upon the judgment in Mitchell v. Neff, and the subsequent assignments of the certificate of purchase and the conveyances to the defendant, the legal title passed from the plaintiff to him.

Admitting that the proceedings in Mitchell v. Neff were duly taken according to the statute of the state in the case of non-resident debtors, what was the effect or force of the judgment as against the person of the defendant or his property? It is admitted on all hands that such a judgment

is not binding in personam. Story, Confl. Law, § 539; D'Arcy v. Ketchun, 11 How. [52 U. S.] 174; Galpin v. Page, 18 Wall. [85 U. S.] 367. And this rule is expressly declared in the Oregon Code of Civil Procedure (section 506), as follows: "No natural person is subject to the jurisdiction of a court of this state, unless he appear in the court, or be found within the state, or be a resident thereof, or have property therein; and in the last case only to the extent of such property at the time the jurisdiction attached." Neither is it claimed by the defendant that this judgment had any other or greater effect than to enable the plaintiff therein to subject this property to the payment of the debt owed him by Neff.

But the plaintiff maintains that the court, in Mitchell v. Neff could not acquire jurisdiction to reach the property of a non-resident, or subject it to the payment of his debts, owed in this state, except by the actual seizure of such property contemporaneous with the commencement of the proceeding or before the rendition of the judgment therein.

In support of this position, the case of Galpin v. Page [Case No. 5,206], decided by Mr. Justice Field, in the circuit court for the district of California, on August 31, 1874, is cited. In this case the learned judge, after showing that "the tribunals of one state have no jurisdiction, and can have none, over persons and property without its territorial limits," proceeds as follows: "But over property and persons within those limits the authority of the state is supreme, except as restrained by the federal constitution. When, therefore, property thus situated is held by parties resident without the state, or absent from it, and thus beyond the reach of the process of its courts, the admitted jurisdiction of the state over the property would be defeated if a substituted service upon the parties were not permitted. Accordingly, under special circumstances, upon the presentation of particular proofs, substituted service, in lieu of personal service, is allowed by statute in nearly all the states, so as to subject the property of a non-resident or absent party to such disposition by their tribunals as may be necessary to protect the rights of their own citizens. * * * A pure personal judgment, not used as a means of reaching property at the time in the state, or affecting some interest therein, or determining the status of the plaintiff, rendered against a non-resident of the state, not having been personally served within its limits, and not appearing to the action, would not be a judicial determination of the rights of the parties, but an arbitrary declaration by the tribunals of the state as to the liability of a party over whose personal property they have no control. The validity of the statute can only be sustained by restricting its application to cases where, in connection with the process against the person, property in the

state is brought under the control of the court and subjected to its judgment, or where the judgment is sought simply as a means of reaching such property or affecting some interest therein, or to cases where the action relates to the personal status of the plaintiff in the state."

But I see nothing in this language or the rule as there laid down, which supports or gives countenance to the position of the plaintiff, unless it be in the statement that the statute giving the right to proceed by publication against non-residents of the state is valid only when restricted "to cases where, in connection with the process against the person, property in the state is brought under the control of the court, and subjected to its judgment."

Now, the property was "brought under the control of the court, and subjected to its judgment" in Mitchell v. Neff, if at all, by the execution which issued upon the judgment. This process against the property of Neff was issued to enforce the judgment given in pursuance of the process against his person. The one was the inception and the other the completion of the proceeding, and so they were connected together as the links in a chain. Certainly, the process against the property could issue in connection with the process against the person without being exactly simultaneous with it. They were related parts of the same proceeding.

Besides, this judgment, though personal in form, was procured, intended and used simply as a means of reaching the property of Neff then within the state, and according to the rule in Galpin v. Page, supra, is so far valid and binding. But the power of the state over the property within its limits, of non-residents, being supreme, and it being admitted on all hands that the state may subject such property "to such disposition by their tribunals as may be necessary to protect the rights of its own citizens," in my judgment, the mode of exercising this power is a matter for the state to determine. In the exercise of this power it may require that the proceedings be strictly in rem and commenced by the seizure of the property, or it may, as provided in this state, upon the proper preliminary showing, permit a suit to be maintained against the non-resident by name—nominally—for the purpose of enabling the plaintiff therein to first judicially establish his right or claim against such non-resident, and then authorize the seizure and disposition of the property so as to satisfy the same. In either case, the result is the same; while the latter mode of proceeding has this to commend it over the former, that it does not permit the seizure or interference with the property of the non-resident until the right or claim of the citizen in or to it is satisfactorily established.

Nor does it appear to me that the state is bound in any case to provide for giving no-

tice to the absent party by publication of the summons or otherwise. That matter pertains to the mode of proceeding over which the state has absolute control. The notice usually given is merely constructive, and in a large number, if not in a majority of cases, gives no information to the absent party. Of course it is the duty of the state to deal justly and considerately with non-residents who have property within her jurisdiction, and therefore it should provide as far as practicable that no proceeding should be taken in her courts to affect such property, without notice to the owner. It being shown that the state has the power to subject the property of non-residents to the payment of debts owing to her citizens by such a proceeding as may by law be provided, including one in which such property is not seized prior to judgment, but thereafter, and then only for the purpose of satisfying said judgment, it remains to be considered whether the judgment in Mitchell v. Neff was given by a court having jurisdiction to do so according to the laws of the state.

The plaintiff maintains that the court acted without jurisdiction, because it appears from the record: (1) That the order of publication was made without evidence that Mitchell had "a cause of action against" Neff; or (2) that any diligence had been used to ascertain his "place of residence." (3) That the service of the summons was not proved as by statute provided.

In consideration of these objections two preliminary questions arise which must first be disposed of, namely: What constitutes a judgment-roll, and it is the only part of the record of the court which may be inspected upon an objection to its jurisdiction? As to what constitutes a judgment-roll in this state there has been no decision by the supreme court of the state, and therefore this court must construe the statute on the subject for itself. The Code of Civil Procedure (section 269) provides that "the clerk shall prepare and file in his office the judgment-roll," "if the complaint has not been answered by any defendant" by attaching "together in the order of their filing, issuing and entry, the complaint, summons and proof of service, and a copy of the entry of judgment." The law of this state at the date of the proceedings in Mitchell v. Neff, provided that whenever personal service cannot be made upon the defendant, and "after due diligence he cannot be found within the state, and when that fact appears by affidavit to the satisfaction of the court or judge thereof, and in like manner it appears that a cause of action exists against the defendant," "such court or judge may grant an order" allowing constructive service to be made in the case, by publication of the summons, "among other cases, when the defendant is not a resident of the state, but has property therein, and the court has jurisdiction of the subject of the action." Code Civ. Proc. § 55.

In the case of Mitchell v. Neff, there was an order granted by the judge allowing service of the summons to be made by publication, under this section. What then constitutes the proof of such constructive service, and is, therefore, a necessary part of the judgment-roll? The question is not altogether free from difficulty, principally because section 69 of the Code, in prescribing what "proof of the service of the summons" shall be, provides, that if served by the sheriff, his certificate thereof; if served by any other person, his affidavit thereof, and "in case of publication, the affidavit of the printer or his foreman or his principal clerk, showing the same."

On behalf of the defendant it is maintained that section 69 limits the effect and scope of the phrase "proof of service," as used in section 269, to the affidavit of the printer touching the mere fact of publication of the summons in the newspaper. But because the effect of the phrase is so limited in section 69 —the printer's relation to and knowledge of the subject beginning and ending with the fact of such publication—it does not follow that the legislature intended it should be so understood and applied when used elsewhere in the Code, particularly when the natural signification of the words and the plain import of the context, as in section 269, require that it should be construed to include other facts than this one.

The judgment-roll of the Code is a mere collection of papers and copies of entries in the case, sufficient, at least, to show a prima facie case of jurisdiction in the court and the exercise thereof until a final determination of the controversy, so far as the particular proceeding is concerned. As its name implies, it is the roll or record of the final determination or judgment, and not of the entire proceedings in the case. Among other things, the proof of service is directed to be placed in such roll, because, without it, it would not appear therefrom that the court had jurisdiction to give the judgment. But how does the mere affidavit of the printer, as to the publication of the summons, show a service of the summons? It cannot appear from such affidavit that any court or judge ever ordered publication of the summons, or, if so, in that particular paper or for that length of time. Such an affidavit may be made and filed in a cause and placed in the roll without any order for publication having been made, or, if there was one, without the publication proved by it being in any essential in accordance with it.

"The proof of service" in a judgment-roll, must, according to the natural signification of the words, and the obvious purpose of section 269, include not only the fact of delivery or publication of the summons, but the authority to do so. In the case of service by a sheriff, his certificate of delivery to the defendant would not be sufficient proof of service, unless it contained evidence of his

authority—that is, was done in his official character; and so when the service purports to be by publication, it is not proven—shown, established—until the authority to publish is proven as well as the publication itself.

This proof—proof of service of the summons—the Code directs to be placed in the judgment-roll as part of it. What constitutes such proof depends upon the circumstances of the case. Where the service is by publication, it must include not only proof of the fact of publication in a newspaper, but the authority therefor. Nothing short of the order of the court allowing the publication will suffice for this purpose; and unless such order state that the facts necessary to give jurisdiction appeared by affidavit, it should include the affidavit also. Admitting that an order for publication containing the statements suggested would be prima facie sufficient, yet the full and complete proof of the service should include the affidavit upon which the order was made.

The only authority cited, which differs from this conclusion, is Hahn v. Kelly, 34 Cal. 304, in which it was held that neither the affidavit for the order for publication nor the order itself were a part of the judgment-roll, and that the only proof of service of the summons which it need contain is the affidavit of the printer to the fact of publication. The court admitted that "the proof of service by publication" should include the affidavit and order of publication, because "in point of law they constitute a part of the mode" of such service; and this itself is sufficient reason why the statute should not have been so construed as to exclude them. In the same court the previous cases of Braly v. Seaman, 30 Cal. 610, and Forbes v. Hyde, 31 Cal. 342, were considered and decided upon the theory that the affidavit and order for publication were a necessary part of the proof of the service and therefore a constituent of the judgment-roll. "Counsel eminent for learning and ability," who argued these important cases, "assumed and therefore conceded that they were a part of the judgment-roll;" and there can be no doubt that the rule first announced in Hahn v. Kelly was a wide departure from what had been understood and assumed by the bench and bar of that state to be the true construction of this statute.

In Galpin v. Page, supra, Mr. Justice Field held that the proof of service must include the affidavit and order for publication. In considering the question he says: "Now it is evident that the language of the statute in the first title mentioned, declaring what shall be proof of service of the summons, must be limited to the action of the persons making the service of publication, of which the sections immediately preceding in the same title speak; as if the language were as follows: 'Proof of the service of a summons by the sheriff or other person, or by a publisher of a newspaper, as above provided, shall be as follows.' The obvious meaning intended is, that the proof of service which the parties performing the particular duty prescribed must furnish, shall be the certificate or affidavit designated. It does not mean that such certificate or affidavit shall be all that is required on the subject of service, but only all that is required of those particular persons. Any other construction would lead to this absurd result, that an affidavit can be used to establish conclusively, a fact to which it makes no reference. Publication of a summons in a newspaper is not service of the summons, nor is an affidavit of such publication proof of service. The publication to be of any avail, must be in a paper designated and for the period prescribed by the order of the court or judge. The terms of such order must therefore be connected with the affidavit, or the proof will amount to nothing. The affidavit, by itself, is only a portion of the proof, a solitary link in the chain required. The printer is not supposed to know anything of the order, and is not called upon even to refer to it in his affidavit. When therefore the record of the judgment comes to be made up, it must necessarily include the order of the court, or it will disclose no proof of service. And when the statute requires the clerk to attach with other papers the proof of service, it means not merely the affidavit which the publisher may furnish as part of such proof, but the order also, without which the affidavit establishes nothing. It is giving to the provision, declaring the proof which the officer or person making personal service or the printer publishing the summons shall furnish of their acts, the effect of a declaration that no other proof of the service was necessary, that error in our judgment was committed in Hahn v. Kelly. That the ruling in that case left the judgment-roll a defective and imperfect record, seems to have been felt by the court, for it says: 'In our judgment, it would have added to the completeness of the record to have made proof of service by publication, include also the affidavit of the party, and the order of the court directing the publication to be made, for, in point of law, they constitute a part of the mode; but the legislature has not seen proper to do so, and we can no more add to their will than we can take from it.' For the reasons we have stated, we do not admit that the statute sanctions any such defective record; but, on the contrary, we are clear, that properly construed, it requires full proof of the jurisdictional facts to be incorporated into the judgment-roll."

I am not advised what has been the practice in this state in this matter. In the case under consideration the roll does not contain the order for publication, but does contain the affidavit therefor. But the order having been put in evidence by the defendant may be considered, so far as he is concerned, a part of the roll. The roll itself is otherwise

made up in utter disregard of the statute, the papers and entries comprising it, being attached together pell mell, without any reference to the order of their issuing, filing or entry; while some of them are motions for orders and judgments and the like, which are out of place.

The ruling in Galpin v. Page, supra, being made by a justice of the supreme court of the United States, is of more direct authority in this court, than that in Hahn v. Kelly, while the reasons for it, to my mind, far outweigh those given in support of the ruling in the latter case. In my judgment there is scarcely a doubt that the judgment-roll, to show "the proof of service," must contain not only the proof of publication of the summons, but also the authority for such publication. But the affidavit and order for publication may be inspected by this court for the purpose of ascertaining whether the court in Mitchell v. Neff had jurisdiction or not, upon another ground. The judgment-roll is not the whole of the record in Mitchell v. Neff. The record of the case comprises "a history of all the acts and proceedings in the action from its initiation to final judgment." Galpin v. Page, supra. A part of this record or history is at least all the papers filed in the case, and upon which the court appears to have acted in any step of the proceedings. So are the entries and files containing the acts and doings of the court in the case. And these are all verities in the same sense, and in the same degree, as the portion of them which by statute constitute the judgment-roll. These are all elements of "the record at common law, which imported absolute verity," and the definition of a record contained in section 719 of the Code of Civil Procedure, is to the same effect: "A judicial record, is the record, official entry or files of the proceedings in a court of justice, or the official acts of a judicial officer, in an action, suit or proceeding."

There is nothing in section 269 prescribing how the judgment-roll shall be made up, which expressly or by implication makes it the record of the case or that imparts to it any more or greater verity, than the rest of the record. As has been already remarked, the judgment-roll is not the whole record of the case, but only a collection of such of the papers and entries as in the opinion of the legislature were necessary or sufficient to show a prima facie case of jurisdiction in the court to pronounce the judgment. The remaining portion of the record which is often voluminous, is omitted from this roll on grounds of convenience and economy. For the same reason, I suppose, the roll is made up in part by attaching the original papers together instead of copying them upon parchment, as was once the case, or in a book, as is still the case in some states, and in this in particular cases. See section 270, Code Civ. Proc. There is really no ground for assuming that the legislature, in providing for this brief judgment-roll, intended to thereby exclude the rest of the papers and entries of the case from the record, and to take from them the force and effect as evidence to which they were otherwise entitled. In the very nature of things, there is just as much reason and convenience in attributing absolute verity to an order for the publication of a summons as to the ex parte judgment given in pursuance of it, in the same case and by the same court or judge; and it is not to be assumed, in the absence of express provisions to that effect, that the legislature would make such an illogical and absurd distinction.

In considering, then, the objections made to the judgment in Mitchell v. Neff, the court will inspect the affidavit and order for publication, as well as the rest of the record, upon the double ground that they are properly a part of the judgment-roll, and also a part of the general record of the case, and therefore, in either case, of equal verity with any part of such roll. If, then, it shall appear from the record in the case that the court in Mitchell v. Neff, never acquired jurisdiction to give the judgment it did, the sale of the premises and subsequent proceedings were void, and the plaintiff must recover. This conclusion would follow upon general principles, and is within the rule expressly declared in section 731 of the Code of Civil Procedure, as follows: "Any judicial record may be impeached, and the presumption arising therefrom overcome, by evidence of a want of jurisdiction in the court or judicial officer * * * in respect to the proceedings."

To proceed, then, with the consideration of the objections: Was the order for publication of the summons made without evidence that Mitchell had "a cause of action" against Neff?

The affidavit of Mitchell upon which this order was made is dated November 13, 1865, and after the title of the cause reads as follows: "I, J. H. Mitchell, plaintiff, being first duly sworn, say the defendant, Marcus Neff, is a non-resident of this state; that he resides somewhere in the state of California, at what place affiant knows not, and he cannot be found in this state. The plaintiff has a just cause of action against defendant for a money demand on account. That this court has jurisdiction of such action. That the defendant has property in this county and state."

The order was granted in open court, on the same date as the affidavit, and reads as follows: "Now at this day comes the plaintiff in his proper person and by his attorneys Mitchell and Dolph, and files affidavit of plaintiff and motion for an order of publication of summons as follows: 'Now comes the plaintiff by his attorneys and upon the affidavit of plaintiff herewith filed moves the court for an order of publication of summons against defendant, as required by law—he being a non-resident;'—and it appearing to

the satisfaction of the court that the defendant cannot after due diligence be found in this state and that he is a non-resident thereof; that his place of residence is unknown to plaintiff, and cannot with reasonable diligence be ascertained by him; and that plaintiff has a cause of action against the defendant; and that defendant has property in this county and state, it is ordered and adjudged by the court that service of the summons in this action be made by publication for six weeks successively in the Pacific Christian Advocate, a weekly newspaper published in Multnomah county, Oregon, and this action is continued for such service."

The judgment in Mitchell v. Neff being now attacked or questioned collaterally, not on appeal, if there is any evidence in the affidavit tending to prove or establish the ultimate fact upon which jurisdiction to grant the order depends—the existence of a cause of action against the defendant—it is sufficient to sustain the judgment. But if there is no evidence of such fact, the court acted without authority and the judgment is void. I find the rule upon this subject laid down very fully and clearly by Mr. Justice Sawyer, in Forbes v. Hyde, 31 Cal. 348, as follows: "There is a marked distinction between an affidavit which presents some evidence on a vital point, but clearly of a character too unsatisfactory to justify an order for publication of summons based upon it, and an affidavit which presents no evidence at all tending to prove the essential fact. In the former case the judge might be satisfied upon very slender and inconclusive testimony; but there being some appreciable evidence of a legal character, which calls into action the judgment of the judge, he has jurisdiction to consider and pass upon it. He may be wholly and egregiously wrong in his conclusion upon the weight of the evidence but he has jurisdiction to act upon it, and his action is simply erroneous. His order would in such case be reversed on appeal. But as there was jurisdiction to act, until reversed, or attacked by some direct proceeding to annul it, the order and judgment based upon it would be valid. Such a judgment could not be collaterally attacked. If, however, there is a total want of evidence on any point necessary to be determined, upon which the law requires the mind of the judge to be satisfied as a prerequisite for granting an order of publication, then there is nothing upon which he is authorized to act; the evidence which is the very basis of his jurisdiction and upon which it depends, is wanting, and his action is without authority. His action is not merely erroneous, for there was nothing to call into exercise the judicial mind—there is no jurisdiction to act at all, and the proceeding is void."

There is nothing in the affidavit of Mitchell which tends to show that he had "a cause of action" against Neff. True, he asserts therein that he has a cause of action, but this is not the statement of a fact tending to prove such a proposition, but a general assertion or expression of opinion that the proposition is true. But it is the province of the court to determine that question, upon the facts to be stated in the affidavit. A general statement that the plaintiff has a cause of action against the defendant is not sufficient. It does not make the matter appear to the court. The facts necessary to show that a cause of action exists must be stated. Concerning the material circumstances of time, place and amount, this affidavit is wholly silent, and whether this supposed cause of action arose upon an indebtedness of one mill for "a small measure of moonshine" or a million of dollars for as many miles of land, is left to conjecture. In Forbes v. Hyde, 31 Cal. 354, Mr. Justice Sawyer quotes, with approval, the following ruling upon this subject from Ricketson v. Richardson, 26 Cal. 153: "An affidavit which merely repeats the language or substance of the statute is insufficient. * * * The ultimate facts of the statute must be proved, so to speak, by the affidavit, by showing the probatory facts upon which each ultimate fact depends. These ultimate facts are conclusions drawn from the existence of other facts, to disclose which is the special office of the affidavit. To illustrate: It is not sufficient to state generally that after due diligence the defendant cannot be found within the state, or that the plaintiff has a good cause of action against him, or that he is a necessary party; but the acts constituting due diligence, or the facts showing that he is a necessary party should be stated. To hold that a bald repetition of the statute is sufficient, is to strip the court or judge to whom the application is made of all judicial functions and allow the party himself to determine in his own way the existence of jurisdictional facts—a practice too dangerous to the rights of defendants to admit of judicial toleration. The ultimate facts stated in the statute are to be found, so to speak, by the court or judge, from the probatory facts stated in the affidavit, before the order for publication can be legally entered."

Of course, in stating that the affidavit contains no evidence of the existence of a cause of action against Neff, I consider the sense of the language of that instrument: "Plaintiff has a just cause of action against defendant for a money demand on account"—as in no degree affected by the words which I have italicised. The expression—"a money demand on account"—is, so far as my knowledge goes, sui generis in the literature of the law. What it means is not obvious, and counsel have not been able to enlighten the court upon the subject. If it means anything, it is an allegation that the affiant has a demand against the defendant "for money on account," which at least is a mere obscure

amplification of what was already said in the averment that he had a cause of action against him.

So far, then, as the affidavit is concerned, it containing no evidence that the plaintiff had a cause of action against the defendant, the court acted without authority in making the order for publication and the same together with the judgment following it, is simply void.

But it is suggested that it appears from the verified complaint on file in Mitchell v. Neff, when this order for publication was allowed, that a cause of action existed in favor of Mitchell and against Neff. The complaint states, that the plaintiff is an attorney, "and as such, has been practicing in Portland, Oregon, for over five years last past. That between January 1, 1862, and May 15, 1863, plaintiff, at defendant's special instance and request, rendered professional services for defendant, as such attorney, which services were reasonably worth the sum of $209 in legal tender notes; that said amount is long since due and unpaid, except $6.50 paid thereon by defendant, January 24, 1863, wherefore," etc.

While it is questionable whether even the complaint states facts sufficient to prove the existence of a cause of action, and therefore to justify the granting of an order for publication, if the question arose upon an appeal, it doubtless contains some evidence tending to establish that conclusion, and, therefore, is sufficient, when the question arises, as in this case, where the judgment is attacked collaterally.

In Forbes v. Hyde, 31 Cal. 355, the complaint which was not necessarily verified, was not in the record. The court was asked to presume that it was verified, and contained evidence tending to show the existence of a cause of action, and that the court in allowing the order for publication may have acted upon it as well as the insufficient affidavit. But it declined to do so, saying: That "it affirmatively appears by the recitals in the order itself that the order was based upon the affidavits of Green and Brooks."

In Mitchell v. Neff the complaint is in the record, and appears to be verified. It is therefore, as to the facts contained in it and relative to this inquiry, substantially an affidavit. The motion for the order for publication, which is recited therein, asks that it be made "upon the affidavit of plaintiff herewith filed," but the order itself does not state that it was made exclusively upon the affidavit. It states: That "it appearing to the satisfaction of the court," etc., without stating how or why. In a case like this there is no presumption that there was any evidence before the court allowing the order other than appears by the record. But it appears from such record that the complaint was on file in the case when the order for publication was allowed, and was therefore before the court, and might have been used by it in allowing the order as evidence that a cause of action existed against Neff. In U. S. v. Walsh [Case No. 16,635], I held that the complaint in an action for a penalty was an affidavit and sufficient for the allowance of a writ of arrest under section 107 of the Code of Civil Procedure. The point is not free from doubt, but my mind inclines to the conclusion that this court ought to presume, if necessary, that the court in Mitchell v. Neff acted upon the evidence contained in the complaint, as well as the affidavit in allowing the order, and therefore I conclude, that so far as this objection is concerned, the judgment is valid.

The second objection to the judgment is, that it does not appear from the record that any diligence was used by Mitchell to ascertain Neff's place of residence. The fact upon which the objection is based is admitted by counsel for defendant, but they insist that it is not necessary that the affidavit upon which the order of publication was allowed, should contain the evidence of such diligence; that the fact might be proved by oral testimony. The order merely states that it appears to the satisfaction of the court that the place of residence of Neff "is unknown to plaintiff, and cannot, with reasonable diligence, be ascertained by him." Upon what evidence this conclusion was reached by the court does not appear, except in the recital that the motion was made upon the affidavit of the plaintiff.

Sections 55 and 56 of the Code regulate the allowance of service of summons by publication, and ought to be taken and construed together. The latter provides that "in case of publication the court or judge shall also direct a copy of the summons and complaint to be forthwith deposited in the post-office, directed to the defendant at his place of residence, unless it shall appear that such residence is neither known to the party making the application nor can, with reasonable diligence, be ascertained by him."

The fact of diligence can only be shown by affidavit, and this must appear by the record. Cook v. Farran, 11 Abb. Prac. 40; 13 How. Prac. 43; Hallett v. Righters, 13 How. Prac. 43; Titus v. Relyea, 16 How. Prac. 373; Hyatt v. Wagenright, 18 How. Prac. 248.

The exposition of section 798 of the Code of Civil Procedure, by defendant's counsel to show that an affidavit could not have been used to prove "diligence" upon the application for the order is unsound. On the contrary, such section expressly provides that an affidavit may be used on a motion. Indeed, I do not understand that the evidence of a witness can be heard on a motion otherwise than by affidavit. The application for the order for publication of the summons was a motion, and any evidence used in support of it should have been by affidavit, and doubtless such was the case. Besides, sections 55

and 56 taken together, by necessary implication, require that the proof of residence and diligence shall be by affidavit. In construing the corresponding sections in the California Code, the court in Ricketson v. Richardson, 26 Cal. 152, said: "Sections 30 and 31 treat of the same general subject, and they must be read together for the purpose of ascertaining what the affidavit and order should contain in order to satisfy the law and make the service complete. It must appear from the affidavit that the person upon whom service is to be made either resides out of the state or has departed from the state * * *; and also whether his residence is known, and if known, it should be stated. * * * The affidavit must show whether the residence of the person upon whom service is sought is known to the affiant, and if known, the residence must be stated. It is true that this is not required in terms in the thirtieth section, which is more especially devoted to the affidavit; but, as we have already said, the whole statute on the subject of service by publication is to be read together, and section 31 requires that where the residence is known the order shall direct a copy of the summons and complaint to be forthwith deposited in the post-office, directed to the person to be served, at his place of residence. In granting the order, the court or judge acts judicially and can know nothing about the facts upon which the order is to be granted, except from the affidavit presented by the applicant. There is no other way of bringing the fact of residence to the judicial knowledge of the court or judge. That the fact of residence should appear in the affidavit is therefore necessarily implied from the whole tenor and scope of the statute. * * * Where this kind of service is sought the proceedings should be carefully scrutinized and strict compliance with every condition of the law exacted; otherwise its provisions may lead to gross abuse, and the rights of person and property made to depend upon the elastic consciences of interested parties, rather than the enlightened judgment of a court or judge."

The evidence of diligence used to ascertain the residence of the defendant, when it is alleged to be unknown to the party making the application, must appear in the affidavit for the same reason that "the fact of residence" should, if known to such party. The one is the equivalent of the other. Either the place of residence of the defendant must be shown, or it must appear that it is unknown to the party and what diligence he has used to ascertain it. They are in the same category, and the law which requires one to be shown by affidavit equally applies to the other. It was not intended that the law should be a means of spoiling non-residents, and therefore it provides that the defendant shall have personal notice of the proceeding if possible, so that he may take proper measures to protect his rights. The provision requiring a copy of the summons and complaint to be mailed to the address of the defendant is a wise and just one, and well calculated to prevent its abuse. Little chance has a non-resident to be informed of the proceedings against him by the mere publication of the summons, often, as in this case, in a weekly newspaper of denominational circulation within the state, and practically none without it.

The court having omitted to make the order directing a copy of the summons and complaint to be deposited in the post-office, addressed to the defendant at his place of residence, upon the mere allegation in the affidavit, that such place of residence was "somewhere in California," then unknown to the affiant, and without any evidence that the plaintiff had ever used any diligence to ascertain such place of residence, or even that he was not conveniently and intentionally ignorant of the fact, the order allowing service by publication, and the service and judgment following it are necessarily void and of no effect.

The third objection to the judgment is also well founded. There was no legal proof of the service of the summons by publication, and therefore the court had no jurisdiction to give the judgment. As has been stated, section 69 of the Code of Civil Procedure requires that the service of the summons shall be proved, in case of publication by the "affidavit of the printer or his foreman or his principal clerk." As appears from the affidavit to the publication it was made by Henry C. Benson, the "editor" of the paper. The statute is imperative and admits of no proof of service but the affidavit of the printer or his foreman or his principal clerk. The reason is obvious. The persons described are the only ones who, as a rule, are likely to have personal knowledge of the fact, by virtue of their relation to the subject. It may be in some cases that the editor has such knowledge also. So it may have been in Mitchell v. Neff, but if it were so it should have been stated. But as a rule the contrary is probably true. One of the elementary rules of evidence is that a fact shall be proven by the best evidence of which, in its nature, it is susceptible. For very cogent reasons this rule ought to be rigidly applied to the proof of jurisdictional facts where the proceeding is ex parte. An editor does not know by virtue of his employment as such, that a summons has been published in all the numbers of the paper he edits, put in circulation during a certain period of time. But the printer may be reasonably presumed to. Therefore the editor's affidavit is not the best evidence of the matter. True he may inform himself concerning it, and so may any one having no relation whatever to the paper. But speaking from information derived at second-hand in this way, the witness is liable to be mistaken or imposed upon.

For these very sufficient reasons, as it appears to me, the legislature has required that

the service by publication shall be proven by the best evidence of which the case is susceptible—the affidavit of the printer, his foreman or principal clerk. This being so, no court is authorized for any reason to assume that the affidavit of an editor or other person, not the printer of a paper, is legal evidence of a publication therein.

But counsel for defendant maintain that due service of the summons appears from the entry of judgment which states "that the defendant had notice of the pendency of the action by publication of the summons for six successive weeks in the Pacific Christian Advocate."

What is meant by the averment "that the defendant had notice of the pendency of the action" is not clear. The averment is without the statute which does not provide that the defendant shall have notice of the pendency of the action by publication, but that constructive service of the summons may be made upon him by that means. Whether he thereby acquires actual notice of the proceeding, the court cannot know and therefore cannot find. The averment should be that the defendant was duly served with the summons by publication of the same in the Advocate, etc. But assuming that this averment is formally sufficient, it does not appear to be true in point of fact. The record not only fails to support it, but actually contradicts it. So far as the record discloses the fact there was no evidence before the court that the defendant had any notice of the pendency of the action by a publication of the summons. The affidavit of the editor of the Advocate was not competent evidence of the fact, and none other appears to have been before the court.

And, finally, it is insisted by counsel for defendant that the court in Mitchell v. Neff was a court of general jurisdiction, and therefore the law presumes its proceedings were regular and in its power, unless the contrary affirmatively appears from the record.

Admitting for the moment that this rule applies in cases of this kind, it is a sufficient answer to say that the contrary does appear here from the record. If the record of a court is silent as to a jurisdictional fact for the purpose of upholding the judgment, it will be presumed that the fact was duly made to appear by the court; but when it appears from the record, that such fact was made to appear by a certain means, it will not be presumed that it was also made to appear otherwise or differently. Here the record shows that the proof of service was made by the affidavit of the editor, and there is no room to presume that it was otherwise or differently made. The record is not silent on the subject. It speaks for itself, and there is no reason or necessity for resorting to presumption. Moreover, in this class of cases, it is not sufficient that an averment of due service of the summons

in the judgment-entry should be not in conflict with the facts contained in the record—it must be affirmatively supported by them. If such an averment could be successfully substituted for the proof of the fact which the statute requires, it is reasonable to suppose that the proof would generally be dispensed with. The averment is a nullity.

But I am satisfied, upon both reason and authority, that the rule in regard to presumptions in favor of the regularity of proceedings in courts of general jurisdiction, does not and ought not to apply in cases where there is no appearance or actual service of the summons, and the defendant is a non-resident of the state. This presumption is a rule of the common law. It had its origin and is only applicable to a procedure in which judgment could not be given against a defendant, unless he was not only personally summoned, but was arrested or appeared in the action. If he did not appear, his goods and the profits of his lands might be distrained ad infinitum to compel an appearance; or if he absconded, he might be outlawed, but no judgment could be given against him in the action until he appeared and was heard. 3 Bl. Comm. 280 et seq. See Hess v. Cole, 3 Zab. [23 N. J. Law] 116.

The court being without jurisdiction to proceed in the action until both parties were before it, and each had an opportunity to allege what he might for himself and against his adversary, it might well be presumed that its judgment was regularly and duly given, unless the contrary affirmatively appeared by the record. Such is still the rule in regard to courts of general jurisdiction when proceeding substantially according to the course of the common law.

But the proceeding in Mitchell v. Neff, so far as the acquiring of jurisdiction is concerned, was in fact and theory ex parte. The record was made by the plaintiff without the knowledge or interference of the defendant. He was not present to question the jurisdiction of the court, or point out wherein the facts stated or shown by the plaintiff were insufficient to authorize its action. The action of the court in the premises in such cases is only formal. Technically it gives the judgment, but substantially the proceeding and record are taken, conducted and made up by the plaintiff upon his own judgment. No presumption ought to be allowed in favor of the jurisdiction in such cases. Every fact necessary to sustain the jurisdiction, must appear from the record or the judgment is void. As was said by Mr. Justice Field, speaking for the court in Galpin v. Page, 18 Wall. [85 U. S.] 368: "Whenever, therefore, it appears from the inspection of the record of a court of general jurisdiction that the defendant, against whom a personal judgment or decree is rendered, was, at the time of the alleged service, without the territorial limits of the court, and thus beyond the reach of its process, and that he

never appeared in the action, the presumption of jurisdiction over his person ceases, and the burden of establishing the jurisdiction is cast upon the party who invokes the benefit or protection of the judgment or decree."

In Galpin v. Page, in the circuit court, supra. it was held, citing the same case in 18 Wall. [85 U. S. 367] that "the presumptions which the law implies in support of the judgment of superior courts of general jurisdiction are also limited to jurisdiction over persons within their territorial limits of the courts, persons who could be reached by their process, and also over proceedings which were in accordance with the course of the common law." And again: "When the judgment of such a court" (of general jurisdiction in civil cases) "is produced, relating to a matter falling within the general scope of its powers. the jurisdiction of the court will be presumed, even in the absence of the formal proceedings or steps by which the jurisdiction was obtained; and such jurisdiction cannot ordinarily be assailed except on writ of error or appeal, or by some other direct proceeding. But when the judgment of such a court relates to a matter not falling within the general scope of its powers, and the authority of the court can only be exercised in a prescribed manner not according to the course of the common law; or the judgment is against a party without the territorial limits of the court, who was not served within those limits, and did not appear to the action. no such presumption of jurisdiction can rise. The judgment. being as to its subject-matter or persons, out of its ordinary jurisdiction. authority for its rendition must appear upon the face of its record. In other words, there is no presumption in favor of the judgments of courts of general jurisdiction, except as to matters and persons falling within the scope of that general jurisdiction. When the proceeding is special and outside of that general scope, either as to subjects or persons, the presumption ceases, and the record must show a compliance with the special authority, by which the extraordinary jurisdiction is exercised. This doctrine is an obvious deduction from principle, and is sustained by adjudged cases almost without number in the highest courts of the several states, and in the supreme court of the United States. There is running all through the reports the emphatic declaration of the common law courts, that a special authority, conferred even upon a court of general jurisdiction. which is exercised in a mode different from the course of the common law, must be strictly pursued. and the record must disclose the jurisdiction of the court. On this subject the cases speak a uniform language, with scarcely a dissenting voice."

But I do not understand that a mode of proceedings is "different from the course of the common law," in the sense in which that phrase is here used. because there may be a difference in mere non-essentials or incidents which change with the manners and circumstances of a people and their ideas of utility and convenience. As, for instance, whether a pleading is verified or not, or a denial is special or general, or a defendant shall answer without or after an imparlance, or an issue shall be made by the complaint and answer, or by an indefinite series of pleadings or altercations if necessary, or there shall be many forms of action or but one. or a judgment in ejectment shall be a bar to another action or not, does not in this sense make the mode of proceeding differ from the course of the common law. But as has been shown, the corner-stone of a proceeding at common law was that no judgment could be given against a defendant unless he appeared in the action. Out of this important fact grew the reasonable presumption that the record was absolutely true and the court had jurisdiction to give the judgment. But the law ceases with the reason of it. There is no reason for such a presumption when the proceeding takes place in the absence of the defendant upon a mere constructive service of process upon him. In such case the record must show affirmatively every fact necessary to give the court jurisdiction, and as to such facts it may be even contradicted, when attacked collaterally in the tribunal of another forum. Thompson v. Whitman, 18 Wall. [85 U. S.] 468. This court and the one that gave the judgment in Mitchell v. Neff are tribunals of different sovereignties exercising a distinct and independent jurisdiction, though within the same territorial limits. The judgment of the state court is only entitled to the same faith and credit in this court as it is in the courts of another state. Galpin v. Page, supra.

I cannot better conclude this opinion than by quoting and adopting the language of Mr. Justice Sawyer in a similar case (Forbes v. Hyde, 31 Cal. 355): "We are not insensible to the fact that this decision may affect many judgments obtained upon service by publication of summons in years past. and for that reason we have bestowed upon the question the attention which its great importance demands. We know that there is probably no state in which there have been. and where there is likely to be, so many occasions for procuring service by publication as in California. But while this is true, it is doubtless equally true. that there is no state in which so many have waited and are still waiting for their adversaries to depart in order that suit may be brought and judgment obtained against them on publication without actual notice. It may be important to the interests of those who suppose they have acquired rights under this class of judgments that they should be upheld. But it is equally important that the interests of parties, who have been only constructively

served with process, and who, in many instances, have had no actual notice till they have been condemned unheard, should be protected. If a judgment is void for want of jurisdiction, all those who have acquired interests under it have done so in full view of the condition of the record; while, on the other hand, a defendant is liable to have an unjust judgment rendered against him without any knowledge of the pendency of the action till it is too late to protect himself. An appeal is no adequate remedy when a party has no notice, for the time to appeal is very brief, and may expire before actual notice is obtained. In the language of the court in Smith v. Rice, 11 Mass. 512. 'the very grievance complained of is that the party had no notice of the pending of the cause and of course no opportunity to appeal.' "

There must be judgment for the plaintiff and findings of fact and law will be prepared in accordance with this opinion.

[NOTE. This judgment was affirmed upon error in the supreme court. Mr. Justice Field delivering the opinion, and Mr. Justice Hunt dissenting. 95 U. S. 714. This cause was again heard in the circuit court upon appeal by defendant from the clerk's taxation of costs. Case No. 10,084. The plaintiff brought an action against the defendant for unlawful cutting of timber and other waste upon the same tract of land. The defendant filed a counterclaim setting up taxes paid and improvements. The case was heard upon plaintiff's motion to strike out counterclaim. Case No. 10,085.]